■ CUSHMAN AND WAKEFIELD, INC., Respondent, v PROGRESS CORPORATION, N.V., et al., Appellants.—Order and judgment (one paper) of the Supreme Court, New York County (Eugene L. Nardelli, J.), entered on August 30, 1989 and September 12, 1989, respectively, which granted plaintiff's motion for summary judgment pursuant to CPLR 3212 and awarded plaintiff $1,234,353.63 plus interest in the amount of $489,672.65 for a total of $1,724,026.28, is unanimously modified, upon the law and facts, to the extent of denying summary judgment against defendant Progress Properties, Inc., striking defendant Prog-

ress Properties, Inc. from the judgment as a party liable, denying summary judgment against defendant Progress Corporation, N.V. as to the third and eighth causes of action only and vacating the award against defendant, Progress Corporation, N.V., on the third and eighth causes of action, remanding the action for a trial on damages as to the first, second, fourth, fifth, sixth, seventh, ninth, tenth and eleventh causes of action, and said order and judgment are otherwise affirmed, without costs.[1]

This breach of contract action allegedly arises out of the defendants' failure to pay real estate brokerage commissions to the plaintiff. The First Amended Complaint sets forth eleven separate causes of action seeking unpaid commissions on eleven different leases. The First Amended Complaint also alleges that four different agreements were entered into pertaining to the brokerage commissions. All of the leases and agreements were entered into between 1980 and 1985.

On September 10, 1980, plaintiff and defendant Progress Corporation, N.V. (Progress Corp.) entered into a management and rental agreement whereby plaintiff was designated as the sole and exclusive leasing agent for the building 900 Third Avenue, which Progress Corp. owned. The contract set forth, *inter alia,* the formula for calculating brokerage commissions and the schedule for payments. In addition, it expressly provided that "agent [plaintiff] shall not be entitled to any commission in connection with a lease at the Building by Owner for Owner's use and occupancy." The first, second, third, fourth and fifth causes of action are based upon this agreement.

On September 22, 1981, ownership of 900 Third Avenue and 906-908 Third Avenue was transferred from Progress Corp. to Progress Partners, a New York partnership consisting of Progress Properties, Inc. (PPI) and JRA Realty (both wholly owned, directly or indirectly, by Progress Corp.). Defendants concede that Progress Corp. remained the beneficial owner.

Even though Progress Corp. was no longer the record owner of 906-908 Third Avenue, by retail space agreement dated February 1983 (with no specific day), it appointed plaintiff the sole and exclusive leasing agent for retail space at that location. The 1980 agreement and its terms were incorporated therein. The ninth, tenth and eleventh causes of action are based upon the retail space agreement.

---

1 Defendant Progress Partners is no longer a party to this appeal, because it has settled this matter with the plaintiff.

A third brokerage commission agreement, necessitated by the involvement of co-broker Charles Goldstein, was entered into by letter dated September 14, 1984, by plaintiff, Progress Corp. and Goldstein. This agreement pertained to a lease for office space at 900 Third Avenue. The sixth and seventh causes of action are predicated upon this agreement.

The eighth cause of action is predicated upon a 1985 oral lease agreement between plaintiff and Progress Corp. This also pertained to space at 900 Third Avenue.

On January 28, 1986, Progress Partners transferred ownership of 906-908 Third Avenue to PPI which, as previously noted, was actually owned by Progress Corp.

Based upon the record herein, defendant PPI was not a signatory to any of the brokerage commission agreements at issue. Progress Corp. was the sole defendant-signatory on those agreements. As such, PPI cannot be held liable for any breach thereof. Moreover, there is no evidence in this record that PPI affirmatively assumed Progress Corp.'s obligation under the agreements. Progress Corp. initially transferred record ownership of 900 Third Avenue and 906-908 Third Avenue to Progress Partners, a partnership consisting of PPI and JRA Realty. Since PPI and JRA were both wholly owned, directly or indirectly by Progress Corp., Progress Corp. remained the beneficial owner of the properties. Indeed, PPI never held title to 900 Third Avenue (the primary source of the alleged commissions) and obtained title to 906-908 Third Avenue in January 1986, after the commencement date of all of the subject leases. It is well settled that " 'in the absence of an affirmative assumption, a grantee is not liable on any covenants or agreements by which the grantor may have bound himself, unless * * * the covenant runs with the land' * * * [and t]here is no question that [a] brokerage agreement is not a covenant running with the land" *(Gurney, Becker & Bourne v Bradley,* 101 AD2d 1012, 1012-1013 [1984]). Therefore, PPI cannot be held liable on an assumption theory. A *quantum meruit* theory is also unavailable to impose liability upon PPI, because PPI either did not hold title to the property or only acquired title after the subject leases had been obtained and had commenced. Consequently, summary judgment should not have been granted against PPI.

As to defendant Progress Corp., with the exception of the third and eighth causes of action, we find that the IAS court properly granted summary judgment in favor of the plaintiff. There is no dispute that the brokerage commission agree-

ments and leases existed between and concerning plaintiff and Progress Corp. with respect to the remaining causes of action. Therefore, we find that liability has been established, as a matter of law, as to those claims.

However, we are remanding the first, second, fourth, fifth, sixth, seventh, ninth, tenth and eleventh causes of action for a trial on damages against defendant Progress Corp. This result is compelled by our conclusion that, based on this record, the Second Notice to Admit is a nullity and defendants' failure to respond did not render it admitted. The pertinent facts are as follows. In July 1987, a discovery schedule setting forth deposition dates was "so ordered" by the IAS court. Plaintiff's (first) Notice to Admit was held in abeyance until the receipt of those deposition transcripts. The depositions were never held and the prosecution of this matter languished for approximately fifteen months. In the interim, defense counsel, Delson and Gordon, dissolved. In October 1988, plaintiff's counsel undertook to ascertain who was representing the defendants. A former partner at Delson and Gordon, Peter Livingston, was located and he, too, embarked on identifying substituted counsel. In November 1988, plaintiff served a motion to compel discovery on Delson and Gordon, Livingston and the Delson and Gordon attorney who signed the July 1987 stipulation. The motion was granted on default by the IAS court, without reference to Livingston's objection that neither he nor the other attorney represented defendants and to a request for 60 days for defendants to retain new counsel. Plaintiff then directed and served the Second Notice to Admit upon Livingston at the law firm of Ross and Hardies. Livingston objected and then arranged for his firm to move for the withdrawl of Delson and Gordon. The IAS court granted that motion on March 22, 1989, and the action was stayed for 30 days. Thereafter, Livingston's firm, Ross and Hardies, was retained to represent the defendants. Plaintiff then moved for summary judgment, relying upon the fact that the Second Notice to Admit had not been responded to and, believing, therefore, that the notice would be deemed admitted. However, defendants were never properly served with the Second Notice to Admit. At the time of service, Delson and Gordon was the attorney of record, but plaintiff served Livingston at Ross and Hardies.[2] There is nothing in the record to establish that

---

2 In light of these facts, we need not reach the issue of whether this plaintiff was required to comply with CPLR 321 (c) prior to the service of the Second Notice to Admit. Indeed, pursuant to the motion of Delson and

Livingston, prior to the substitution of Ross and Hardies, was authorized to act on behalf of either Delson and Gordon or the defendants. Thus, the Second Notice to Admit is a nullity.

Without the Second Notice to Admit, there is insufficient evidence in the record to determine the proper damages to be awarded. First, we note that the complaint is unverified. Second, whereas the parties do not dispute that the leases and brokerage commission agreements in the record exist and are authentic with respect to all but the third and eighth causes of action, they do dispute the interpretation and application of the terms of those leases and agreements. This bears directly upon the damage award which must be calculated from the amount of rent, term of lease and the percentages or amounts set forth in the agreements, as well as any commissions already paid. Third, the complaint which, *inter alia,* alleges the total amounts due and outstanding is unverified. The Second Notice to Admit, which also contained this information, is a nullity. There is no affidavit from plaintiff as to these amounts. Therefore, there is no evidentiary basis for determining the damages. Consequently, a remand is required.

With respect to the third and eighth causes of action against Progress Corp., in the absence of the Second Notice to Admit, we find that the evidence is insufficient to establish that plaintiff is entitled to judgment as a matter of law. The third cause of action concerns a third Central National Bank lease. However, plaintiff has never produced that lease and defendants' answer effectively denied that there is a lease.[3] Therefore, there is a dispute as to a material fact. In addition, we reject defendants' argument that the "owner" exemption in the management and rental agreement precluding commissions on leases to the owner is ambiguous and that this exemption should apply to the Central National Bank leases (first, second and third causes of action). Central National Bank was never a record or beneficial owner of either 900 Third Avenue or 906-908 Third Avenue. The fact that Central National Bank had shareholders in common with Progress Corp. is of no consequence with respect to the exemption

---

Gordon to withdraw, made after the Second Notice to Admit was served, a 60 day stay was granted to allow for the retention of new counsel. However, at the end of that period, plaintiff did not serve the Second Notice to Admit, upon Ross and Hardies, now officially counsel for defendants.

3 This failure of proof precludes summary judgment regardless of the failure of the defendants to produce this document. It is the obligation of the plaintiff to present a *prima facie* case. If defendants improperly withheld evidence, sanctions may be proper, but not summary judgment.

because the agreement did not specify that such an entity could or would qualify as an "owner". Moreover, the Central National Bank leases in the record (first and second causes of action), contain clauses indicating that plaintiff was the only broker involved, which indirectly speaks to the entitlement to a commission.

As to the eighth cause of action, plaintiff has failed to provide the agreement establishing its right to a commission and Progress Corp.'s obligation to pay it. Consequently, the plaintiff was not entitled to summary judgment against Progress Corp. on the eighth cause of action. Concur—Carro, J. P., Asch, Kassal and Smith, JJ.