OPINION OF THE COURT
Diane A. Lebedeff, J.
Fourth-party defendant Meadow Mechanical Corporation asserts plaintiff’s counsel engaged in abusive, offensive and improper professional conduct during the discovery phase of litigation and moves for sanctions under part 130 of the Rules of the Chief Administrator of the Courts (22 NYCRR).
The sanctions request is based on two incidents. The first centers around insulting remarks made during depositions, which are admitted, and the second alleges an improper suggestion regarding notarizations, which is denied. This recitation is deceptively simple. Issues which must be resolved include the use of an objective or subjective standard for abusive conduct, the sanctions target, the form of sanctions, the possibility of criminal penalties, the creation of satellite litigation, and the considerations to be applied where the attorney of record has been disbarred. The two incidents merit separate examination and treatment.
Movant has already secured the dismissal of all claims raised against it. The court’s final decision dismissing those claims preserved jurisdiction for the determination of sanctions, which allows the issue to remain before the court (compare, Matter of Levin v Axelrod, 168 AD2d 178, 181 [3d Dept 1991]).
*704 ABUSIVE LANGUAGE AND CONDUCT
As Beth Rex, Esq., was representing the fourth-party defendant in a deposition, Lawrence Clarke, Esq., of the law firm of Paul S. Mirman, Esq., P. C., in front of numerous attorneys, the witness, and the reporter, made a number of remarks. As documented on the transcript of the deposition, Mr. Clarke directed to his colleague the following comments: "I don’t have to talk to you, little lady”; "Tell that little mouse over there to pipe down”; "What do you know, young girl”; "Be quiet, little girl”; "Go away, little girl.” Ms. Rex states these comments "were accompanied by disparaging gestures * * * dismissively flicking his fingers and waving a back hand at me.” The transcript contains the remarks and an attorney for another party corroborates the description of the gestures. The affidavit in opposition justifies the comments as "name-calling”.
This court finds that the words used here are a paradigm of rudeness, and condescend, disparage, and degrade a colleague upon the basis that she is female. Offensive or abusive language by counsel is not proper professional conduct (see, containing many examples, Annotation, Attorney’s Verbal Abuse of Another Attorney as Basis for Disciplinary Action, 87 ALR3d 351 [1978]). An attorney who exhibits a lack of civility, good manners and common courtesy tarnishes the image of the legal profession (Matter of McAlevy, 69 NJ 349, 354 A2d 289, 291 [1976]), and an attorney’s "conduct * * * that projects offensive and invidious discriminatory distinctions * * * based on race * * * [or] gender * * * is especially offensive” (Matter of Vincenti, 114 NJ 275, 283, 554 A2d 470, 474 [1989]). Further, the Code of Professional Responsibility, as recently amended, explicitly forbids an attorney to "[unlawfully discriminate in the practice of law” and provides that a final determination "finding that the lawyer has engaged in an unlawful discriminatory practice shall constitute prima facie evidence of professional misconduct in a disciplinary proceeding” (Code of Professional Responsibility DR 1-102 [A] [6] [22 NYCRR 1200.3 (a) (6)]).
It takes no great scrutiny to determine that the remarks made by Mr. Clarke are improper. New York State Judges have been publicly disciplined for virtually identical comments. Twice addressing a female attorney as "little girl” was the basis for public admonition, with such words described as "an epithet calculated to demean the lawyer” and "objection *705 able no matter what its origin”; calling female attorneys "girls” was described as "demeaning and undignified” and of an "offensive nature” (see, 8 Determinations of NY St Commn on Judicial Conduct, at 192 [1982-1983]; 1988 Ann Report of NY St Commn on Judicial Conduct, at 28; see also, concerning racial slurs and abusive remarks, Matter of Fabrizio, 65 NY2d 275 [1985]; Matter of Agresta, 64 NY2d 327 [1985]; Matter of Cerbone, 61 NY2d 93 [1984]). Similarly, in Federal District Court, an attorney who, among other things, disparagingly called a Judge’s law clerk "young lady” was found to have "engaged in abusive and discourteous” conduct and publicly censured (Matter of Werner, NYLJ, Jan. 28, 1991, at 6, col 3 [ED NY 1991]). The remarks here are less restrained and more abusive than these quoted remarks.
The condemnation of such improper remarks springs from a growing recognition of the seriousness of gender bias and that bias of any kind cannot be permitted to find a safe haven in the practice of law or in the workings of the courts and the judiciary. Then Chief Judge Cooke, as he announced the formation of a Task Force on Women in the Courts, placed the issue of discrimination squarely in that context when he stated that justice is a "concept * * * broad in reach and serious in nature * * * antithetical to any discrimination triggered by prejudice” (Report of NY St Task Force on Women in Courts [1986], Appendix A [reprinted in 15 Ford-ham Urban U 15, 167]). After two years of study, the Task Force concluded that "gender bias against women * * * attorneys * * * is a pervasive problem” (Preface; id., at 193, 207). The legal community’s awareness of the problem is increasing. Since the Task Force’s report, two law reviews have devoted issues to Gender Equality in the Legal Profession (57 Fordham L Rev 931 et seq. [1989]) and Symposium on Women in the Lawyering Workplace (35 NY L Sch L Rev 293 et seq. [1990]). These same concerns have also been explored in articles by Judge Judith Kay of the Court of Appeals (see, cg., Women Lawyers In Big Firms: A Study in Progress Toward Gender Equality, 57 Fordham L Rev 111, 122-126 [1988]).
The fundamental concern raised is that discriminatory conduct on the part of an attorney is inherently and palpably adverse to the goals of justice and the legal profession. The principles involved are so basic that they are set forth in the Preamble to the Code of Professional Responsibility as follows: "The continued existence of a free and democratic society depends upon recognition of the concept that justice is based *706 upon the rule of law grounded in respect for the dignity of the individual * * * Law so grounded makes justice possible, for only through such law does the dignity of the individual attain respect and protection”. While the conduct here falls under the heading of sexist, the same principle applies to any professional discriminatory conduct involving any of the variations to which human beings are subject, whether it be religion, sexual orientation, physical condition, race, nationality or any other difference.
Turning to the specific instance present here, movant has exposed the behavior to light and refused to let it stand as another hidden "dirty little secret,” which, while undoubtedly occurring on a daily basis, no one speaks about in public. By this motion, both the firm with which Ms. Rex is associated, the Law Office of Steven J. Smetana, and the client, Meadow Mechanical Corporation, object to the abusive treatment of which their associate and attorney was subjected. It is clear that they prize Ms. Rex, who is, in fact, an able attorney whose vigorous prose and oral argument have been observed by this court during the conduct of this litigation. Seeking sanctions from this court is not a display of an inability to overlook obnoxious conduct, but an indication of a commitment to basic concepts of justice and respect for the mores of the profession of law. The movant has turned to the court to give force to a basic professional tenet.
A first consideration is whether the behavior presented falls within the type of instances in which sanctions have been awarded. Authority clearly indicates that part 130 sanctions may be used to address abuses in the discovery process of litigation, specifically including deposition misconduct, abusive or insulting conduct, obstructionist tactics, or conduct well outside the norms of accepted practice, all of which terms apply.
As to misconduct in a deposition, part 130 sanctions have been imposed when an attorney thwarts one party’s effort to depose another, for example, by unilaterally directing a client not to respond and continually objecting to matters other than form (Levine v Goldstein, 173 AD2d 346 [1st Dept 1991]). Additionally, as in Odette Realty Co. v DiBianco (170 AD2d 299, 301 [1st Dept 1991]), sanctions were upheld in part for "repeated failure to comply with court directives * * * [to] appear for deposition.”
Insulting language used in the discovery process has also *707 warranted sanctions. An extreme instance is presented in Jermosen v State of New York (178 AD2d 810, 811 [3d Dept 1991]), in which a prison inmate answered the State’s request for photocopying expenses with threats, for which he was ultimately convicted in Federal court. After the Court of Claims denied sanctions and dismissal, the Third Department found sanctions applicable to "vituperative, debasing, insulting and threatening” conduct and dismissed the matter, noting that "[s]uch conduct by a claimant who seeks relief from our judicial system will not be tolerated.”
Obstructionist tactics may merit sanctions (see, unwarranted objection to Referee’s authority remanded for sanctions consideration, Deutsch v Deutsch, 174 AD2d 550, 551 [1st Dept 1991]). Obstruction by withholding evidence may also be sanctionable (see, Cushman & Wakefield v Progress Corp., 172 AD2d 191, 195, n 3 [1st Dept 1991]).
Sanctions are also appropriate when an attorney egregiously fails to conform to accepted notions of conduct. For example, when an attorney improperly supplemented papers to the Appellate Division thereby "flouting * * * well-understood norms of * * * practice” and then persisted in "continuing this unheard of practice,” sanctions were awarded (Rosenman Colin Freund Lewis & Cohen v Edelman, 165 AD2d 533, 536, 537 [1st Dept 1991]). Similar treatment was given in Gerstein v I Travel (169 AD2d 492 [1st Dept 1991]), in which an attorney repeatedly served motion papers on opposing counsel, prompting such counsel to file opposition papers only to learn that no papers had been filed with the court, and in Guarnier v American Dredging Co. (172 AD2d 220 [1st Dept 1991]), in which an attorney violated accepted rules of conduct during jury selection by an improper attempt to curry favor with one juror in the presence of the other jurors.
Based upon a review of behavior which has been found to merit sanctions, the court concludes the behavior here falls within well-established categories of sanctionable conduct. A final factor to be considered is the circumstances of the behavior (22 NYCRR 130-1.1 [c] [2]). Given that Mr. Clarke’s objectionable remarks and conduct were repeated several times, there is no excuse that his objectionable behavior was a single comment which could have been uttered spontaneously without reflection (see, vacating sanctions for one remark in jury selection, Council v Duic, 180 AD2d 583 [1st Dept 1992]).
The inquiry does not end here, for the behavior falls within *708 that portion of the rule which permits sanctions for behavior "undertaken primarily * * * to harass or maliciously injure another” (22 NYCRR 130-1.1 [c] [2]), raising the issue of whether the court must consider the subjective motivation of the attorney. Under a subjective test, the actor’s intention becomes critical and a finding of "a clean heart and an empty head” forecloses inquiry.
Without rejecting the possibility that such a standard might be mandatory if the court were to consider conduct which could be judged only by subjective criteria, this court adopts as the preferred test for frivolous conduct, even for abusive and objectionable behavior, the objective test of considering the conduct against that of a "reasonable attorney.”
An "objectively reasonable” test has been adopted for the application of rule 11 of the Federal Rules of Civil Procedure by the United States Supreme Court in Business Guides v Chromatic Communications Enters., (498 US 533, 550-551 [1991]). Part 130 contains the same or similar operative words as are present in rule 11, which imply a certification that a paper is not "interposed for any improper purpose, such as to harass.” Such language also mirrors the part of Code of Professional Responsibility DR 7-102 (A) (1) (22 NYCRR 1200.33 [a] [1]), which mandates professional conduct be "Within the Bounds of the Law” and requires an attorney not to take action which would serve "merely to harass or maliciously injure another”.
Here, the court finds that the conduct at issue was not the conduct of a "reasonable attorney.” Given the rules applicable to professional conduct, any reasonable attorney must be held to be well aware of the need for civility, to avoid abusive and discriminatory conduct, to conduct proper depositions, to eschew obstructionist tactics, and to generally abide by the norms of accepted practice. The court finds no need to inquire whether the offensive remarks and conduct sprang from a misogynous or other maladapted point of view and acknowledges that they could have stemmed from a tactical desire to make opposing counsel uncomfortable.
It is not ignored that part 130 requires a determination that the behavior at issue was "undertaken primarily * * * to harass” and was not in good faith. Because a good-faith test implies a standard uncertain in application and slippery in nature, this court adopts the following language as a bright-line standard for testing the bad-faith aspect of frivolity: *709 "[F]rivolous * * * means that the [behavior or] legal claim can be supported by no colorable argument, is unsupported by precedent, logic, or other rational argument, and lacks any significant support in the legal community * * * The court, upon examination of circumstantial evidence [in the record], is adequately equipped to characterize misconduct * * * as constituting bad faith.” (Committee on Federal Courts, Comments on Federal Rule of Civil Procedure 11 and Related Rules, 46 Record of Assn of B of City of NY 267, 293 [1991]). As this language makes clear, the record allows a court to determine bad faith by the time-honored practice of drawing a conclusion from the pattern of conduct existing in the record.
Under an objective standard and utilizing the record, it takes only an experienced judicial eye to conclude whether a litigation pattern follows a legitimate or frivolous course. Such judicial determinations have included, for example, whether litigation was "a means of resolving a genuine legal dispute [or] a mechanism to delay [an] inevitable eviction” (Matter of Minister, Elders & Deacons of Refm. Prot. Dutch Church of City of N. Y. v 198 Broadway, 76 NY2d 411, 414 [1990]), and whether a motion was "a vehicle for harassing [an ex-spouse or] for settling any genuine issues of custody and child support” (Belsky v Belsky, 175 AD2d 900, 901 [2d Dept 1991]).
Indeed, the making of a decision on the underlying issue is generally part and parcel of a sanctions inquiry. For example, a conclusion that a contested issue is "a technical one, [which] petitioner cannot be faulted for failing to fully comprehend” (Matter of Levin v Axelrod, 168 AD2d 178, 181 [3d Dept 1991]), or that resistance on motion is excusable because of the "complexity of the issues” (Thomson U.S. v Gosnell, 151 Misc 2d 249, 258 [Sup Ct, NY County 1991]), is sufficient to defeat a sanctions claim.
Based upon the foregoing, the court finds that the abusive and insulting language and conduct of plaintiffs counsel during depositions were frivolous and sanctions are appropriate.
IMPROPER NOTARIZATION
The second instance of improper conduct involves notarizations. As alleged by movants, plaintiffs counsel belatedly provided authorizations for plaintiff’s workers’ compensation and medical records without notarizations. When the missing notarizations were brought to Mr. Clarke’s attention, he sug *710 gested Ms. Reed have the signatures notarized in her office after the fact and without the signators present.
The act allegedly suggested by Mr. Clarke could subject the actor to criminal penalties. False swearing or deceit constitutes a "serious crime” falling under the definition of Judiciary Law § 90 (4) (d), and a conviction therefor is grounds for professional suspension under Judiciary Law § 90 (4) (f) (see, Matter of Ballinger, 148 AD2d 152 [1st Dept 1989] [involving forgery of a notary’s signature]). Additionally, a notary public who practices fraud or deceit in the performance of a notary’s duties may be charged with a misdemeanor (Executive Law § 135-a [2]).
New York courts have recognized the appropriateness of sanctions when questions of improper behavior such as withholding of evidence are raised (Levy v Bronx County Carting Co., 172 AD2d 356 [1st Dept 1991]). One Federal court has imposed sanctions upon an attorney who improperly appended a notarization to an unsworn affidavit telefaxed to a law office, emphasizing the nature of the misconduct was a fraud upon the court (Illinois Cent. R. R. Co. v R.R. Land, 1992 WL 38109 [ED La 1992]).
The opposition dismisses the complaints about the suggested notarizations. Because there is an underlying factual dispute, as in Pearl v 305 E. 92nd St. Corp. (175 AD2d 735 [1st Dept 1991]), a hearing would be necessary to determine if the behavior which is urged as the basis for the sanctions request actually took place. Accordingly, a sanctions determination may not be reached on the record as it stands.
To resolve the issues regarding notarizations in this forum would lead to what is known as satellite litigation, litigation directed solely at the issue of sanctions. This court views the limited financial deterrent of $10,000 available under part 130 as a strong indication that part 130 sanctions were not intended to encourage such litigation. The court is loathe to add to the costs of litigation and the burdens on the parties and the court by finding it to be imperative to direct a hearing and to resolve all issues relating to sanctions in this forum, but neither should such grave allegations be ignored.
An appropriate fact-finding body does exist. It is recognized that, even when part 130 sanctions are not imposed, referral to a Departmental Disciplinary Committee can be appropriate (see, although rejecting sanctions for citing law in an affirmation, Armendariz v Tiramisu Rest., 170 AD2d 334 [1st Dept 1991]). The court finds such a referral appropriate here.
*711 Based upon these considerations, sanctions for plaintiff’s counsel’s conduct with respect to the notarizations are denied and movant is directed to serve a copy of this decision upon the Departmental Disciplinary Committee having proper jurisdiction over Mr. Clarke.
SANCTIONS TARGET
There is no apparent involvement of the client present here. When the frivolous conduct is in the context of litigation aspects which are in the control of an attorney rather than a party, it is appropriate to sanction the attorney and not the client (see, Jones v Camar Realty Corp., 167 AD2d 285 [1st Dept 1990]). Additionally, "[w]here, as here, the frivolous action of counsel results in improper use of the court’s time as well as that of [opposing] counsel,” sanctions should be imposed against that attorney (CCS Communication Control v Kelly Intl. Forwarding Co., 166 AD2d 173, 175 [1st Dept 1990]).
As to Mr. Clarke’s employer, the court has considered that in the context of rule 11 sanctions, the United States Supreme Court has held that sanctions should be imposed only on the involved attorney and not on the attorney’s law firm vicariously (Pavelic & LeFlore v Marvel Entertainment Group, 493 US 120 [1989]). Here, the firm could have reflected and apologized for the conduct of its employee but did not. Additionally, the attorney of record acknowledged it received similar complaints about Mr. Clarke in the past and, although volunteering that Mr. Clarke would be discharged, which was not the end desired by either movants or the court, did not do so.
However these considerations might be evaluated in more standard circumstances, the analysis herein is perforce complicated by the employer’s disbarment after this motion was made. Counsel for plaintiff was Paul S. Mirman, Esq., P. C. Mr. Mirman himself has been previously ordered to pay sanctions in several instances (Lewis v Agency Rent-A-Car, 171 AD2d 731 [2d Dept 1991] [frivolous appeal]; Lewis v Agency Rent-A-Car, 168 AD2d 435 [2d Dept 1990] [frivolous appeal]; Matter of Nationwide Ins. Co. v Gonzalez, 108 AD2d 637 [1st Dept 1985] [condition of vacating default]). Mr. Mirman was disbarred, with the Appellate Division finding a "pattern of gross neglect * * * blatant disregard for the rights of his clients, as well as the two admonitions and five letters of caution * * * by the Grievance Committee” (Matter of Mir- *712 man, 167 AD2d 60, 65 [2d Dept], appeal dismissed and lv denied 78 NY2d 1042 [1991], cert denied — US —, 112 S Ct 1561, 118 L Ed 2d 209 [1992]).
Mr. Mirman, while not necessarily beyond the reach of a judgment, has already been deprived of his former livelihood and been the subject of the most stringent professional judgment regarding his failure to adhere to proper professional standards. Financial sanctions, absent a compelling justification, would be redundant and an improvident exercise of this court’s discretion.
The court has also considered whether the counsel of record who has substituted for Mr. Mirman should be subjected to sanctions. Where there is no issue that the client generated the behavior found sanctionable, the court rejects the view that new counsel should be deterred from representation by the risk of being subjected to sanctions for the actions of a former attorney of record.
The responsibility for the abusive conduct must be borne by Mr. Clarke. Mr. Clarke’s actions were not compelled by any need to represent a client’s position, but, rather, reflect his own intemperate actions. An imposition of sanctions upon the actor generally " 'bring[s] home to the individual * * * [a] personal, nondelegable responsibility’ ” to abide by proper standards of conduct (Business Guides v Chromatic Communications Enters., supra, 498 US, at 547, quoting Pavelic & LeFlore v Marvel Entertainment Group, supra, at 126; compare, firm’s encouragement of frivolous conduct, Calloway v Marvel Entertainment Group, 854 F2d 1452 [2d Cir 1988]).
Consistent with 22 NYCRR 130-1.1 (d), the offending party must be given "a reasonable opportunity to be heard,” which is satisfied by the notice provided by a request for sanctions (see, Dellafiora v Dellafiora, 172 AD2d 715 [2d Dept 1991]; Hendrickson v Saratoga Harness Racing, 170 AD2d 719 [3d Dept 1991] [no notice]). As also mandated by that section, "[t]he form of the hearing shall depend upon the nature of the conduct and the circumstances of the case”, which in this case have been satisfied by the motion and opposition papers and oral argument. Mr. Clarke did not appear on this motion nor did he submit an affidavit in opposition, but plaintiff’s firm did so. Although Mr. Clarke chose to be silent on this motion, he had the opportunity to speak and be heard, which is all that part 130 requires.
*713 The imposition of sanctions is a matter entrusted to the sound discretion of the trial court (see, Odette Realty Co. v DiBianco, supra; Parks v Leahey & Johnson, 180 AD2d 479 [1st Dept 1992]). As discussed above the court determines that sanctions should be awarded only against the particular attorney involved, Mr. Clarke.
THE FORM OF SANCTIONS
Because the court has found sanctions appropriate for the offensive remarks and conduct, the form of such sanctions must be considered. 22 NYCRR 130-1.1 provides: "(b) The court, as appropriate, may make such award of costs or impose such financial sanctions against either an attorney or a party to the litigation or against both. Where the award or sanction is against an attorney, it may be against the attorney personally or upon a partnership, firm, corporation, government agency, prosecutor’s office, legal aid society or public defender’s office with which the attorney is associated and that has appeared as attorney of record. The award or sanctions may be imposed upon any attorney appearing in the action or upon a partnership, firm or corporation with which the attorney is associated.” In this case, there is no allegation that the deposition conduct disrupted the deposition and it appears that the behavior necessitated only the additional cost of bringing this motion. Accordingly, the reasonable attorneys’ fees and actual costs incurred as a result of the frivolous conduct found here are relatively minimal. However, movants’ inability to specify any other particular monetary loss does not deprive this court of its authority to assess sanctions (see, First City Fed. Sav. Bank v Dennis, 128 FRD 180 [SD NY 1989]; as to possible need for hearing on fees, Gerstein v I Travel, supra).
This case does highlight the possibility of expanding part 130 sanctions beyond the merely financial. The Federal courts have found some authority to impose a requirement of other forms of sanctions. Indeed, proposed amendments to rule 11 provide that "the sanction may consist of, or include, directives o[f] a nonmonetary nature” (Committee on Professional Responsibility, Proposed Amendments to Federal Rule of Civil Procedure 11, 47 Record of Assn of B of City of NY 65, 83 [1992]). Such authority may ultimately evolve in relation to part 130, for even the concept of payment to the Clients’ Security Fund appears to have been originated by case law *714 (see, McLoughlin v Henke, 130 Misc 2d 1091 [Sup Ct, Queens County 1968, Lonschien, J.]).
This court does not ignore that, for a suspended attorney or one who may seek readmission, some gesture of contrition should be capable of demonstration upon that application. The court suggests that, should Mr. Mirman so aspire, an appropriate act would be to send a suitable letter of apology (see, Matter of Werner, supra).
CONCLUSION
Based on the foregoing, Mr. Clarke is directed to forward $500 to the Clients’ Security Fund and, based upon the court’s observation and experience, $500 to movant’s attorney as reasonable attorney’s fees for the motion. However, if Mr. Clarke, within 15 days of service upon him of a copy of this order with notice of entry, submits an affidavit to chambers, with a copy to movant and other counsel, objecting to the amount fixed as attorney’s fees, the court will assign the matter to a Special Referee to hear and report on the amount of (1) the actual costs and fees sustained by movant and (2) the amounts expended on such hearing. The Special Referee shall recommend whether the amount of fees shall include the amount attributed to the hearing. If such request is filed and served, movant shall defer entry of any judgment as to the costs awarded to movant’s counsel until entry of an order upon a motion to confirm the Special Referee’s recommendations.
Should there be no timely objection by Mr. Clarke and the payments directed herein not be made without that time period, movant may enter a judgment in accordance with this decision.