*940 OPINION OF THE COURT
Robert D. Lippmann, J.
This court held a hearing regarding the sanctions to be imposed upon plaintiff Marion Sakow and her counsel, by reason of their conduct in the underlying litigation. In this action, plaintiff alleged that defendants Arthur Cutler and Jeffrey Baynon had misappropriated for their use funds belonging to Columbia Bagel, Inc. On February 10, 2004, Justice Ramos dismissed plaintiffs claims, finding that there was no proof to support the allegations that Cutler and Baynon had converted or misappropriated Columbia’s funds for their personal use. This court then held a two-day hearing on sanctions, beginning on April 2, 2004. The scope of the hearing was to determine the extent of damages resulting from pretrial rules violations by plaintiff that Justice Ramos held were sanctionable, and to determine whether sanctions were warranted against plaintiff Marion and her counsel, Morton Robson and his firm Robson, Ferber, Frost, Chan & Essner, LLP (collectively Robson), by reason of other alleged misconduct in the prosecution of this action. The only witness at the hearing who testified on behalf of plaintiff was Robson. Neither Marion nor her husband Walter Sakow testified.
The instant action had been pending since 1991. In 1995, the Sakows had their son, Marcus, personally conduct discovery in this action by going to the offices of Kaplan, Thomashower & Landau LLP to inspect, copy and Bates-stamp Columbia’s documents over a period of approximately two weeks. Marcus assembled and then photocopied and Bates-stamped various documents, including the daily cash reports of Columbia (reports) with their annexed backup documents, including bank deposit tickets and invoices for cash purchases of supplies. Marcus scanned the documents into a computer and created computer images for them. In preparing exhibits for trial, Marcus deleted the Bates numbers from the reports and removed the backup documents from them. In rebutting defendants’ papers, Marcus explains that, since many of the documents were small, he placed several of them on the photocopy machine at the same time and thus ending up with numerous pages that had photocopies of multiple documents. He Bates-stamped each page as it was copied.
At the trial before Justice Ramos, Marion and Robson attempted to leave the impression that cash was unaccounted for in Columbia’s records, when in fact this was not the case.
*941 In one example, Robson attempted to introduce reports for January 1992 (exhibit 34). Exhibit 34, like other exhibits that Marion sought to introduce, isolated each day’s report on a separate page without its supporting documents.
A substantial portion of the trial was consumed with Marion’s unsuccessful attempts to admit various exhibits that were excluded on such grounds as incompleteness, hearsay and lack of foundation.
The Commercial Division Operating Statement mandates that the parties must “cooperate with each other . . . for the purpose of conserving time and limiting expenses during the pre-trial and trial phases of the case.” Marion and Robson violated the rule in several ways. They demanded that defendants update their 1993 document production on the eve of trial; although defendants located the necessary documents, Robson never sought to copy or inspect them. They served an “Expert Designation” five days past the deadline, designating Dennis Rosenzweig. Robson had previously agreed to produce Rosenzweig for a deposition, but then failed to produce him, claiming that Rosenzweig was ill. Defendants then moved to compel the deposition. In response, Robson served a notice to take Rosenzweig’s deposition, four days before trial, purportedly to preserve the testimony in the event that the expert was too ill to appear at trial. Justice Ramos permitted the deposition and directed Robson to provide a doctor’s note to explain the possible unavailability of Rosenzweig, but no note was ever produced. Robson never produced Rosenzweig for deposition. Ultimately, after a conference with Justice Ramos, Robson withdrew Rosenzweig as an expert.
According to defendants, plaintiff engaged in flawed analysis of the sales of Columbia. Although plaintiff focused on the number of bagels sold, defendants showed that the wholesale dollar sales of bagels, not the number of bagels actually sold at wholesale, were a material part of Columbia’s sales.
Robson failed to submit copies of contested exhibits to the court and to defendants within the time frame required by rule 30 of the Rules of the Justices of the Commercial Division, Supreme Court, New York County. When Robson finally served a list of contested exhibits, he did not include copies of the documents. Robson never filed any charts or schedules.
On December 8, 2003, Justice Ramos held that Robson had violated the Rules and precluded Marion from offering any charts. Moreover, Justice Ramos granted the defendants’ mo *942 tion to suppress statements made by Arthur Cutler at a 1989 global settlement meeting. Robson later filed a posttrial brief which sought to reargue the admissibility of the Cutler statements. That brief claimed that the Cutler statements were not part of the settlement, without revealing that Walter had signed an affidavit swearing that the statements were made at a settlement discussion.
Also on December 8, 2003, Justice Ramos stated that in the event that defendants sustained prejudice or were forced to engage in extra work by reason of plaintiffs failure to submit exhibits in a timely fashion, plaintiffs counsel was to be sanctioned.
Robson’s posttrial brief contended that Justice Ramos had wrongly quashed a subpoena served on defendant Baynon, but improperly attached a different subpoena from the one actually served on Baynon.
In an affidavit filed in opposition to defendants’ motion to dismiss the action, Robson attempted to introduce records purporting to show that $234,475 had been taken out of Columbia. It turned out, however, that these documents were not those of Columbia, but related to another business owned by Arthur Cutler, Murray’s Sturgeon Shop. Although Robson did not learn until November 26, 2003 that the documents were those of Murray’s, he continued to use them after that date. Robson contends, however, that such use was inadvertent.
On December 10, 2003, shortly after the trial began, Justice Ramos quashed a subpoena which Robson had attempted to serve upon John Thomas. Although the subpoena was served on a woman who claimed to be Mrs. Thomas at his home on Friday, December 5, it was not mailed to Mr. Thomas until December 8, 2003, which rendered service untimely. Justice Ramos issued sanctions of $2,000 against both Robson and plaintiff.
Under 22 NYCRR 130-1.1, the court has discretion to award sanctions for frivolous conduct. This is defined as conduct which is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; which is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or which involves the assertion of materially false factual statements.
Defendants are not basing their demand for sanctions upon the mere commencement of this action. They are seeking sane *943 tions only for the pretrial proceedings from October 10, 2003 through the trial and the posttrial submissions. In considering sanctions, this court must consider the time which plaintiff had available for investigating the legal or factual basis of the case.
The authority to impose sanctions and costs is within the court’s sound discretion (De Ruzzio v De Ruzzio, 287 AD2d 896 [3d Dept 2001]). The court’s power to impose sanctions serves the dual purpose of vindicating judicial authority and making the prevailing party whole for expenses caused by his opponent’s obstinacy (Matter of Gordon v Marrone, 155 Misc 2d 726 [Sup Ct, Westchester County 1992], affd 202 AD2d 104 [2d Dept 1994], lv denied 84 NY2d 813 [1995]). In assessing whether to award sanctions, the court must consider whether the attorney adhered to the standards of a reasonable attorney (Principe v Assay Partners, 154 Misc 2d 702 [Sup Ct, NY County 1992]). Sanctions are awardable against both a party and his or her attorney (Precise Ct. Reporting, Inc. v Karten, 6 AD3d 412 [2d Dept 2004]).
An attorney cannot safely delegate all duties to others. For example, an attorney who engages a process server is nevertheless responsible to ascertain that service was properly made (Kleeman v Rheingold, 81 NY2d 270 [1993]). By analogy, where, as here, an attorney entrusts his client, or his client’s designee, with assembling documents, he has a duty to ascertain that the documents are accurate.
Although plaintiff may initially have had a reasonable basis for commencing the action, plaintiff unnecessarily protracted this matter even after it became apparent that she did not have sufficient proof of a misappropriation of assets. Plaintiff prepared and tendered altered exhibits. Plaintiff also knew that neither she nor her husband Walter could give probative testimony regarding the claims. In addition, plaintiff knew that she did not have a usable accounting or financial expert, and that all charts had been stricken. Since the client and attorney worked closely together on this case, both are equally responsible for the delays, and both are subject to sanctions. On the other hand, in awarding sanctions, this court must consider the fact that plaintiff did not know until shortly before trial that many of the documents which she would have introduced as exhibits were those of Murray’s, not Columbia. This appears to have adversely affected plaintiffs ability to prepare for trial.
This court finds that the frivolous conduct of plaintiff and her counsel caused defendants to expend 20% more time than the *944 case otherwise should have taken. The costs submitted by defense counsel appear to be reasonable. Accordingly, this court directs that an award of sanctions be entered against both plaintiff and her counsel equal to 20% of the costs and attorneys’ fees submitted in defendants’ proposed findings of fact and conclusions of law. Defendant Alice Cutler is awarded the sum of $72,215 for fees and expenses of her attorneys, plus $7,987 for fees and expenses of the expert witness, Frank, plus $1,322 for the fees and expenses of Joel Popkin & Co., for a total of $82,640. Defendant Columbia Bagel, Inc. is awarded $16,785 in fees, costs and expenses. Defendant Jeffrey Baynon is awarded $19,322 in fees, costs and expenses.