[616 NYS2d 98]

In the Matter of ALLAN S. GORDON, Appellant, v ANNA M. MARRONE, as Tax Assessor of the Town of North Castle, et al., Respondents.

Second Department, September 12, 1994

APPEARANCES OF COUNSEL

*Fulbright & Jaworski*, New York City *(James Nespole* and *Donald J. Lough* of counsel), for appellant.

*Sive, Paget & Riesel, P. C.*, New York City *(Mark A. Chertok* and *Clifford L. Davis* of counsel), for The Nature Conservancy, respondent.

*Chadbourne & Parke*, New York City *(Toni C. Hamburg, Caroline L. Orlando, Barry H. Garfinkel* and *William M. Bradner, Jr.*, of counsel), for Scenic Hudson, Inc., and others, *amici curiae.*

*G. Oliver Koppell, Attorney-General*, New York City *(Nancy Stearns* of counsel), for State of New York, *amicus curiae.*

## OPINION OF THE COURT

RITTER, J.

Litigants who use our court system for improper purposes, such as for retribution and harassment, may be sanctioned under the rules designed to deter frivolous conduct. The Supreme Court dismissed the proceeding here, on the merits, although it determined that the petitioner had raised a "colorable" claim. The court imposed a sanction against the petitioner, finding that the litigation had been brought primarily for improper purposes. The issue on appeal, one of first impression, is whether the prosecution of a colorable claim for

primarily improper purposes constitutes frivolous conduct sanctionable under the court's rules. We hold that the imposition of a sanction by the court here was proper.

## I

The petitioner owns more than 160 contiguous acres of property in the Town of North Castle. He resided in North Castle from 1975 through 1987, before moving to nearby Greenwich, Connecticut. He also owns substantial undeveloped tracts of land in the nearby area; one 36-acre parcel, known as "Thornbrook", is situated in the Town of Bedford.

The Nature Conservancy (hereinafter The Conservancy) owns a 569-acre parcel located in part, in the Towns of North Castle and Bedford, near the petitioner's Thornbrook property. The Conservancy, a not-for-profit corporation, operates a nature preserve on its property. It also owns a separate 3.8-acre parcel across the roadway opposite the entrance to its nature preserve, and adjoining the Thornbrook property. A 3,000-square-foot structure known as the "Gibb House" is situated on The Conservancy's smaller parcel and is used in part as the year-round administrative headquarters for the operation of its nature preserve.

In 1979 an application was made to the North Castle Tax Assessor for an exemption from payment of real property taxes for the Gibb House parcel. The application was granted pursuant to RPTL 420-a. An application to continue its tax exempt status was made and granted in each successive year after 1979.

In or about March 1985 the petitioner applied to the Town of Bedford Planning Board (hereinafter the Planning Board) for approval to subdivide his Thornbrook parcel. Because of the site's proximity to the environmentally sensitive Mianus River Gorge, the Planning Board determined that full-scale environmental review was required under the State Environmental Quality Review Act (hereinafter SEQRA, ECL 8-0101 *et seq.*). The SEQRA process was prolonged and obviously costly for the petitioner. The Conservancy actively participated in the process and strongly opposed the petitioner's proposed development of his property. Indeed, The Conservancy hired a consultant and submitted a proposed alternative plan to the Planning Board with respect to the development of the Thornwood subdivision. Ultimately, the Planning Board adopted The Conservancy's alternative proposal.

In or about October 1989 and again in or about September 1990, the petitioner commenced CPLR article 78 proceedings to challenge the Planning Board's actions, and to compel acceptance of his proposed development plan for the Thornbrook subdivision. The Conservancy was granted leave to intervene in the proceedings and submitted detailed papers in support of the Planning Board's actions. The instant litigation, another CPLR article 78 proceeding, was commenced during the pendency of the petitioner's second proceeding against the Planning Board.

The purported reason for bringing the instant proceeding was to challenge the tax exempt status of The Conservancy's Gibb House parcel. Both the Tax Assessor and The Conservancy defended the challenge on the merits and moved for dismissal. The Conservancy alleged further that the proceeding had been commenced solely in retaliation for its involvement in the Thornbrook subdivision SEQRA process and to deplete its economic resources. It requested an award of costs and the expenses of defending the litigation.

By decision dated March 27, 1991, the Supreme Court dismissed the petitioner's CPLR article 78 proceeding. The court held that the petitioner had no standing to challenge The Conservancy's tax exempt status and rejected the substance of the petitioner's claim that The Conservancy's tax exempt status was invalid. The court further concluded that the petitioner had no legitimate motive in challenging the Tax Assessor's determination other than retaliation against The Conservancy for its opposition to his proposed Thornbrook subdivision. Holding that the petitioner's actions were "frivolous conduct" *(Matter of Gordon v Marrone,* 151 Misc 2d 164, 169-170), the court reserved decision on the application for an award of costs to give the petitioner an opportunity to be heard.

The Conservancy's attorneys submitted affidavits in support of its application for an award of attorney's fees and costs. The petitioner's attorneys submitted opposition to The Conservancy's application and moved for leave to reargue on the question of whether sanctions should be imposed. The petitioner contended that the court had made factual and legal errors in arriving at the conclusion that the litigation had been commenced primarily to harass or retaliate against The Conservancy.

The Supreme Court granted reargument and concluded that

the petitioner's assertion of standing and his challenge to the Gibb House tax exemption were "colorable." However, the court adhered to its determination that the litigation had been instituted primarily for improper purposes and ordered the petitioner to pay $10,000 to The Conservancy as and for its reasonable attorney's fees *(see, Matter of Gordon v Marrone, 155 Misc 2d 726).**

## II

Monetary sanctions for vexatious and frivolous litigation practice became a topic of controversy in the mid 1980's *(see, Siegel, NY Prac § 414A, at 630 [2d ed]).* In 1985, this Court issued two opinions holding that the courts have inherent power to impose sanctions as a means of curbing abusive and frivolous litigation *(see, Ltown Ltd. Partnership v Sire Plan, 108 AD2d 435, mod 69 NY2d 670; Gabrelian v Gabrelian, 108 AD2d 445).* Frivolous claims and abusive litigation practices were causing unjustifiable burdens on an already overcrowded court system. Inordinate delays in the resolution of genuine disputes and increases in the expense of lawsuits for both litigants and the courts were the result. The need for sanction power had become obvious.

In *Ltown Ltd.,* we addressed standards for the imposition of sanctions in cases involving frivolous appeals. The experience of courts in other States, most notably California, helped shape what this Court viewed as an appropriate definition of "frivolous". The following language from a decision of California's highest court was cited as a useful guidepost: " '[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit' " *(Ltown Ltd. Partnership v Sire Plan, supra,* 108 AD2d, at 442, quoting, *In re Marriage of Flaherty,* 31 Cal 3d 637, 650, 646 P2d 179, 187).

---

* The petitioner did not seek reargument with respect to the branch of the court's decision which dismissed the proceeding on the merits. The court also made a lengthy analysis of whether the instant proceeding should be classified as a "SLAPP" suit (Strategic Lawsuit Against Public Participation). We deem it unnecessary to decide whether such classification fits under the circumstances of this case. The issue we are deciding on appeal here is narrow. It hinges on the court's conclusion that the instant proceeding, no matter how it is classified, was instituted primarily for improper purposes in violation of 22 NYCRR subpart 130-1.

Also, in 1985, the Legislature concluded that frivolous litigation was a contributing cause of a liability insurance crisis. CPLR 8303-a, permitting the imposition of monetary sanctions in certain tort actions, was enacted as part of a legislative package intended to reduce frivolous claims and alleviate the crisis. The statute provides alternative grounds for a finding of frivolousness, both of which require "bad faith". Subdivision (c) requires a finding of one or more of the following:

"(i) the action, claim, counterclaim, defense or cross claim was commenced, used or continued in bad faith, solely to delay or prolong the resolution of the litigation or to harass or maliciously injure another;

"(ii) the action, claim, counterclaim, defense or cross claim was commenced or continued in bad faith without any reasonable basis in law or fact and could not be supported by a good faith argument for an extension, modification or reversal of existing law".

In 1986 the Court of Appeals addressed the question of whether a court is empowered to impose sanctions for frivolous litigation or abusive practices, absent express legislative authority (see, Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1). The Court stated that "frivolous court proceedings present a growing problem which must be deterred" (supra, 69 NY2d, at 4). The Court noted further that other existing remedies such as disciplinary action against attorneys, or actions for damages on theories of malicious prosecution or abuse of process, had not proved to be effective deterrents. Because frivolous litigation was viewed as a serious threat to the proper administration of justice, and because the Legislature had only addressed the problem in personal injury litigation, not generally, the Court of Appeals held that courts may proscribe such conduct and impose sanctions in the exercise of their rule-making powers, in the absence of legislation to the contrary (supra, 69 NY2d, at 6). Rules governing the imposition of costs and sanctions for frivolous conduct in civil cases other than those covered under CPLR 8303-a, were promulgated by the Chief Administrator of the Courts, effective January 1, 1989 (see, 22 NYCRR subpart 130-1).

## III

The petitioner's primary argument on appeal is that the assertion of a colorable claim cannot constitute frivolous

conduct under the court rules even if brought for an improper purpose. This contention is clearly without merit.

Conduct is frivolous and can be sanctioned under the court rule if "it is completely without merit * * * and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; *or* * * * it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another" (22 NYCRR 130-1.1 [c] [1], [2] [emphasis added]). The plain meaning, and the only reasonable construction of the language used in this rule, indicates that conduct meeting either of the two definitions of frivolousness can be sanctioned. Although no appellate case has addressed the precise question presented here, the decision of the Court of Appeals in *Matter of Minister, Elders, & Deacons of Refm. Prot. Dutch Church v 198 Broadway* (76 NY2d 411) supports our holding in this case.

In the *Dutch Church* case, a tenant of certain commercial premises engaged in a series of actions designed to frustrate enforcement of a judgment awarding possession to the petitioner. After two unsuccessful appeals, and two prior motions in the Court of Appeals, the tenant made yet a third and plainly untimely motion to the Court of Appeals for reconsideration. The Court imposed a sanction finding that the motion was frivolous under either definition specified in 22 NYCRR subpart 130-1. Notably, the Court found that some of the steps taken by the tenant were "of at least colorable merit" *(supra,* 76 NY2d, at 414). However, upon consideration of the over-all history of the case, the Court concluded that the tenant had used the courts "not as a means of resolving a genuine legal dispute but rather as a mechanism to delay [its] inevitable eviction" *(supra,* 76 NY2d, at 414).

IV

In the instant case, the Supreme Court's finding that the petitioner's claim was colorable did not preclude it from also finding that the primary purpose of the lawsuit was to harass and punish The Conservancy because of its opposition to his Thornbrook subdivision. We conclude that the reasonable inferences to be drawn from the evidence in the record here fully support this latter finding.

We conclude further that the petitioner's procedural and substantive due process rights were properly safeguarded by the procedures followed here. The rules require a reasonable

opportunity to be heard before the imposition of a sanction. The form of the hearing shall depend upon the nature of the conduct and the circumstances of the case *(see,* 22 NYCRR 130-1.1 [d]). The request for an award of costs and attorney's fees asserted in The Conservancy's answer to the petition, combined with the court's consideration of the papers submitted by the petitioner in support of his reargument motion, afforded him with adequate notice and a reasonable opportunity to be heard on the issue of sanctions *(see, Matter of Minister, Elders & Deacons of Refm. Prot. Dutch Church v 198 Broadway,* 76 NY2d 411, 413, *supra; Martino v Martino,* 194 AD2d 591, 592). There was no need for the court to hold a formal evidentiary hearing as the pertinent material facts were not disputed.

Finally, we reject the petitioner's contention that an award of sanctions *under the circumstances here* impermissibly infringes upon his First Amendment right of access to the courts. Enforcement of the sanctions rule is essential to deter conduct that wastes judicial resources and inhibits the proper administration of the court system. Any effect it may have on substantive rights, as alleged by the petitioner, is merely incidental and not prohibited *(cf., Business Guides v Chromatic Communications Enters.,* 498 US 533, 552).

We have considered the petitioners remaining contentions and find them to be without merit.

THOMPSON, J. P., ROSENBLATT and SANTUCCI, JJ., concur.

Ordered that the appeals from the judgment entered May 21, 1992, and the resettled judgment entered May 21, 1992, are dismissed, without costs or disbursements, as the judgment and resettled judgment were superseded by the second resettled judgment entered June 1, 1992; and it is further,

Ordered that the second resettled judgment entered June 1, 1992 is affirmed, with costs to the respondent The Nature Conservancy.