OPINION OF THE COURT
Daniel Palmieri, J.
The motion by defendants pursuant to CPLR 3211 and 3212 for an order dismissing the complaint and for summary judgment on their counterclaims, and pursuant to CPLR 8303 and 22 NYCRR 130-1.1 for sanctions for frivolous conduct is *664 granted to the extent that the complaint is dismissed, summary judgment is granted on the first counterclaim for costs and attorney’s fees, and counsel for plaintiffs shall pay a sanction, as set forth herein.
Upon a search of the record, so much of the first counterclaim that seeks additional compensatory and punitive damages is dismissed, and the second counterclaim is dismissed in its entirety. A hearing shall be held to determine the costs and attorney’s fees awarded to defendants under this decision and order.
All requests for relief not specifically addressed are denied.
The defendants contend that plaintiffs’ action is a SLAPP suit and calls not only for dismissal, but also for an award of damages to the defendants. The court agrees.
This case was brought as an outgrowth of a relatively common and generally unremarkable application to a local zoning authority. As alleged in the complaint, plaintiff the Doris Moffitt Dailey 2001 Revocable Trust owns an unimproved parcel of land in the Village of Munsey Park, New York, which lies in the unincorporated area of Manhasset, New York. The individual plaintiffs are the trustees. It is undisputed that in June 2013 plaintiffs entered into a contract of sale to sell the property for $1,215 million to a buyer identified elsewhere in these papers as DJD Holdings, LLC, or DJD Residential (DJD). However, the sale was contingent upon obtaining the Village’s permission[1] to subdivide the lot into two parcels.
Again, according to the complaint, prior to entering into this contract plaintiffs had secured the opinion of the Village’s Building Inspector that the lot was large enough to accommodate two houses, without the need for a variance; the clear implication was that there was no obvious impediment to approval of the subdivision into two lots. An application for that approval was thereafter brought before the Village by plaintiffs’ buyer, DJD. Plaintiffs allege that absent such approval the contract was to expire on December 31, 2013, unless further extended by the seller. It is undisputed that such an extension has occurred.
The defendants, residents of the village, learned of the pending application, and were opposed to the subdivision and *665 ultimate construction of two houses. They communicated with their neighbors in the area, seeking support for their opposition. Defendant Brian J. Griffith acknowledges in his affidavit that he created an online Internet petition, in which defendants sought electronic signatures from those who agreed with their position on the pending application. A copy of this petition is annexed to the defendants’ moving papers. In substance, it recites that a hearing was to be held at the Village Hall on November 13, 2013, regarding the possibility of the subdivision, and invited the public to attend and express opposition. It further states, in pertinent part, that
“[i]f this were to occur, it would forever change the look and feel of Manhasset Woods Road and the community. Lots in Munsey Park have been subdivided in the past and they never look right. Please join us in telling the village Planning Board that we are not in favor of the subdivision. . . .The current plan before the Board of Directors requests the subdivision of the approximate half acre corner lot . . . into two approximate quarter acre parcels on which to build two spec houses. . . . Two structures crammed onto this one lot will be an eyesore that can never be removed if approval is granted.”
The petition announced that 311 such signatures had been garnered and that more were being sought.
A public hearing was held at the Village Hall on November 13. Present were the Mayor, Deputy Mayor, three other Trustees, and DJD and its attorney, as well as some of the present defendants and plaintiffs. During the course of the meeting, a presentation was made by DJD, and a number of residents expressed their opinions, including defendants Brian Griffith, Kimberly Griffith and Kelly Ann Towers. Plaintiff Mary Wendell Bennett spoke as well. The meeting on this issue ended without a decision having been made. That determination, and the online petition, remained open as of the final submission date of this motion. As indicated in the motion papers, two more village meetings occurred in January and February 2014, but there is no indication of a decision on the application.
The plaintiffs’ action was begun sometime in January 2014. Essentially, the complaint alleges that the defendants are attempting to undermine them for no legitimate reason. They thus accuse the defendants of having a personal interest in the outcome, that they are friends of the Mayor and certain Trustees of the Village, that there is no sound basis for rejecting their *666 application, and that the online petition, containing signatures of persons outside the community, was set up to create the “impression” that there was significant and justifiable opposition.
Two causes of action are asserted. The first sounds in tortious interference with business relations/contract. The second sounds in defamation and punitive damages.
The defendants’ motion is predicated on their contention that plaintiffs’ action is a SLAPP suit, an acronym for strategic lawsuit against public participation. SLAPP suits are legislatively disfavored, and the Civil Rights Law at sections 70-a and 76-a provides for an action, claim, cross claim or counterclaim to recover damages from any person who commences or continues such a lawsuit. The prospect of such damages clearly is meant to protect members of the public who choose to speak out on public issues. (T.S. Haulers v Kaplan, 295 AD2d 595 [2d Dept 2002].) As indicated by Justice Jones by way of his citation to 600 W. 115th St. Corp. v Von Gutfeld (80 NY2d 130 [1992], cert denied 508 US 910 [1993]), the legislation flows from First Amendment protections. (Southampton Day Camp Realty, LLC v Gormon, 2012 NY Slip Op 31767[U] [Sup Ct, Suffolk County 2012].)
Further, once a party seeking relief based on the foregoing has demonstrated that the case involves public petition and participation, CPLR 3212 (h) provides that it is the plaintiff, not the moving defendant seeking dismissal of the SLAPP suit, who bears the burden on the summary judgment motion. The plaintiff can avoid dismissal of the action only if it can be shown that the suit has a substantial basis in fact and law, or is supported by a substantial argument for an extension, modification or reversal of existing law. (CPLR 3212 [h]; Novosiadlyi v James, 70 AD3d 793 [2d Dept 2010]; T.S. Haulers v Kaplan, 295 AD2d 595.) Further, in order for the plaintiff to recover, the Civil Rights Law requires not only that all necessary elements of the claims made can be established, but also a factual showing, by clear and convincing evidence, that any communications giving rise to the suit were made with knowledge of falsity or with reckless disregard of whether it was false, where truth or falsity is material to the cause of action. (Civil Rights Law § 76-a [2].) Summary judgment therefore must be awarded to a defendant seeking dismissal of a plaintiffs suit and summary judgment on a counterclaim for attorney’s fees unless these statutory requirements can be met, or the plaintiff can demonstrate that an is *667 sue of fact exists with regard thereto. (Civil Rights Law § 70-a [1] [a]; Novosiadlyi v James, 70 AD3d 793; T.S. Haulers v Kaplan, 295 AD2d 595.)
Here, the court finds that plaintiffs’ action is a SLAPP suit. Civil Rights Law § 76-a (1) (a) and (b) define such actions as one brought by a “public applicant or permittee” which is “materially related” to “any efforts” of the defendant to oppose an application to or the granting of permission by a government body, and a “public applicant or permittee” is not only the applicant but also any person “with an interest, connection or affiliation” in or with such applicant.
The complaint itself, and the affidavit of plaintiff Bennett, submitted in opposition here, are more than sufficient to make these required findings. As noted above, there was a contractual relationship between plaintiffs and the applicant that made completion of the sale (and thus payment to the plaintiffs) contingent on DJD’s success in obtaining the Village’s permission to subdivide the lot. Plaintiffs are thus “public applicants” under the statute. Further, this suit is “materially related” to the defendants’ efforts in opposing the subdivision, as the plaintiffs’ causes of action accuse them of wrongful conduct in pursuing that opposition, and seek money damages therefor.
The court having made that finding, it becomes the plaintiffs’ burden to demonstrate that all elements of the two alleged torts can be satisfied. They also must show that there exists clear and convincing evidence that the communications that gave rise to the suit—in this case, the petition and the statements made at the public hearing—were made with knowledge of their falsity or with reckless disregard of whether they were false, as the alleged false nature of the communications made to the public clearly is material to their claims.
These burdens have not been met. Since it is undisputed that the contract between plaintiffs and D JD has not been abandoned or canceled by D JD, the critical element of a breach procured by defendants cannot be established, as needed to support the first cause of action, tortious interference with contract. (See e.g. Israel v Wood Dolson Co., 1 NY2d 116 [1956]; Chung v Wang, 79 AD3d 693 [2d Dept 2010].)
The broadly worded second cause of action sounds in defamation (as plaintiffs contend the defendants made false and malicious allegations attempting to “vilify” them), but the claim fails because defamatory words are not set forth, either in the pleadings or in evidentiary matter submitted on this motion. *668 (CPLR 3016 [a]; cf. Bulow v Women In Need, Inc., 89 AD3d 525 [1st Dept 2011].) In addition, to the extent the alleged defamatory statements stem from the defendants’ petition or the hearing, the court finds that they are not reasonably susceptible of a defamatory meaning. It is also worth noting that because the hearing was held as part of the Village’s role as decision-maker on the application, which is quasi-judicial in nature, statements made there enjoy an absolute privilege. (See Matter of Gaeta v Incorporated Vil. of Garden City, 72 AD3d 683 [2d Dept 2010]; Allan & Allan Arts v Rosenblum, 201 AD2d 136 [2d Dept 1994].)
To the extent that the second cause of action is exclusively one for punitive damages, as plaintiffs appear to argue in their memorandum of law, New York does not recognize such a separate common-law claim for such relief. (Rocanova v Equitable Life Assur. Socy. of U.S., 83 NY2d 603 [1994]; Stein v Doukas, 98 AD3d 1024 [2d Dept 2012].) Even assuming that plaintiffs may be seen as having attached this request for exemplary damages to its defamation claim, there is nothing in these papers to indicate the type of truly egregious behavior and necessary mental state on defendants’ part that would justify such a result. (See Morsette v The Final Call, 309 AD2d 249 [1st Dept 2003].)
In addition, there is no evidence of any kind, let alone clear and convincing evidence, that the statements and other communications made by defendants regarding the deleterious effect on the appearance/character of the neighborhood surrounding the subject lot—which forms the sine qua non of the defendants’ opposition to the subdivision—were false. Indeed, given the inherently subjective nature of this opposition it would be difficult for any plaintiff to make that showing.
Rather, the arguments and evidence presented by plaintiffs in large measure have to do with the defendants’ allegedly selfish and venal motives, and the conflicts of interest of the decision makers. They are essentially irrelevant. Such contentions might be advanced in a CPLR article 78 proceeding to overturn a negative decision by the Village on DJD’s application, but have no bearing on the Civil Rights Law sections referred to above. In a SLAPP suit, which is so defined because it is addressed to public participation and public commentary, the motivation of the defendants and even the influences on the decision makers simply are not factors to be weighed under the relevant statutory standards.
The plaintiffs also point to the alleged deliberate misrepresentation by defendants of the application as being one for *669 permission to build houses, instead of one that was for the subdivision only. This argument is at least relevant to the issue of false communications, but is also, to be charitable, disingenuous, and ultimately insubstantial. The record on this motion, especially the transcript of the public hearing, reveals that the ultimate goal of plaintiffs’ vendee, and thus the reason for the application for the subdivision, was indeed to build a house on each of the newly created lots. Moreover, the petition specifically refers to the subdivision of the lot as being the issue before the Village. The plaintiffs have thus failed to show that the defendants were engaged in a deliberate attempt to mislead the public regarding the nature of the application.
Finally, and in view of the foregoing, the plaintiffs have been unable to demonstrate that there was a substantial basis in fact and law for their action. No argument is made for a change in the law cited above. (CPLR 3212 [h].)
The court notes, but rejects, plaintiffs’ contention that a final determination of this matter should be held in abeyance pending disclosure proceedings. This is in effect a resort to CPLR 3212 (f), which provides for such a result on a summary judgment motion where it appears that facts essential to justify opposition may exist but cannot then be stated. However, it is well established that this should not be permitted where there is no more than a mere hope that such facts will be discovered. (Jian Zheng v Evans, 63 AD3d 791 [2d Dept 2009]; Companion Life Ins. Co. of N.Y. v All State Abstract Corp., 35 AD3d 519 [2d Dept 2006].) The disclosure requested concerns the behavior of the defendants and public officials, which is addressed above and is largely irrelevant to the issues presented by a SLAPP suit. There is a general request to pursue discovery about “other inflammatory statements” made by defendants, but this is not a substitute for some evidence that defendants may have made additional and allegedly false public statements above and beyond what is complained of and discussed here, and that discovery thus is needed. (Companion Life Ins. Co. of N.Y. v All State Abstract Corp., 35 AD3d 519.)
In view of the foregoing, summary judgment must be granted dismissing the complaint. (CPLR 3211, 3212 [h].)
Turning to the counterclaims, the court finds that plaintiffs’ failure to meet the statutory requirements discussed above must lead to summary judgment on the first counterclaim to the extent attorney’s fees and costs are sought. (Civil Rights Law § 70-a [1] [a]; T.S. Haulers v Kaplan, 295 AD2d 595.)
*670 However, upon a search of the record (CPLR 3212 [b]) the court dismisses so much of this counterclaim that seeks compensatory and punitive damages pursuant to Civil Rights Law § 70-a (1) (b) and (c).
Paragraph (c) provides that “punitive damages may only be recovered upon an additional demonstration that the [plaintiffs] action . . . was commenced or continued for the sole purpose or harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights” (emphasis supplied).
It is clear from the submissions made to the court that the plaintiffs’ motivation for this suit was at least partially, and likely mainly, economic gain. This fatally undermines this aspect of the first counterclaim, as the statute requires that the desire to injure or deny the stated First Amendment rights be the sole motivation of the SLAPP suit plaintiff. This is analogous to common-law prima facie tort, which is subject to dismissal when it is clear that economic interests, not simply a desire to harm, motivated the alleged tortfeasor. (See e.g. Smallwood v Lupoli, 107 AD3d 782 [2d Dept 2013].) The court is aware that because economic gain is almost always involved in cases such as these, most counterclaim defendants will be hard pressed to recover punitive damages. Nevertheless, as New York does not recognize a common-law independent claim for punitive damages, as discussed above (and relied upon by the defendants), this statute creates a claim where none would otherwise exist; it is thus in derogation of the common law and must be strictly construed. (See Vucetovic v Epsom Downs, Inc., 10 NY3d 517, 521 [2008]; Staruch v 1328 Broadway Owners, LLC, 111 AD3d 698 [2d Dept 2013].)
Punitive damages are also not recoverable here as a matter of common law because no separate common-law tort is pleaded, regarding which such a claim may be attached, and as noted no independent claim for punitive damages exists.
With regard to Civil Rights Law § 70-a (1) (b), the statutory claim for compensatory damages, the defendants have not made out a prima facie showing, and the record is completely devoid, of any evidence that they have suffered additional losses above and beyond attorney’s fees and costs. Indeed, there is no relevant factual claim to be found in defendants’ pleading. Accordingly, it is dismissed.
Also upon a search of the record, the court dismisses the second counterclaim for what is described as “First Amendment *671 Retaliation.” This counterclaim must be deemed abandoned, as it is not supported by any argument on this motion for summary judgment on the defendants’ counterclaims separate and apart from the first, and is to a large extent redundant of the first. Further, a claim for violation of First Amendment rights claimed by defendants that is not covered by the cited sections of the Civil Rights Law must be based on some form of governmental action. (See SHAD Alliance v Smith Haven Mall, 66 NY2d 496 [1985].) No such assertion is made here.
The court now turns to the matter of sanctions, sought by the defendants pursuant to CPLR 8303-a and 22 NYCRR 130-1.1. Because they are entitled to attorney’s fees and costs from plaintiffs pursuant to the Civil Rights Law, as set forth above, the court declines to address and award the same as a sanction as well under either or both of these sections. However, this does not end the inquiry, because sanctions are also sought against plaintiffs’ attorney.
Sanctions may be awarded against an attorney for frivolous conduct, as that term is defined in the Uniform Rule cited in the preceding paragraph.[2] Attorneys have a duty to analyze a case and to make a determination of merit independent of the client. (Heilbut v Heilbut, 18 AD3d 1 [1st Dept 2005].) In this case plaintiffs’ attorney should have known that the complaint he endorsed and presumably drafted constituted a SLAPP suit pleading, and thus required him to be able to satisfy the heavy burdens placed upon the plaintiffs by CPLR 3212 (h) and Civil Rights Law § 76-a (2). These statutes are not new, and there is a body of case law on the subject as well.
Under these circumstances, the court finds that because these requirements are clear and that the papers opposing defendants’ motion are devoid of these necessary showings of merit, as discussed above, the attorney’s conduct was “frivolous” within the meaning of 22 NYCRR 130-1.1, and that sanctions are appropriate. The court has also considered the fact that defendants’ counsel had written to him after the defendants’ motion was made offering plaintiffs “safe harbor,” a withdrawal of the motion and the requests for fees, sanctions and punitive damages in exchange for withdrawal of the action and related protec *672 tions for the defendants, but this obviously was declined. The refusal to recognize the inherent weakness of plaintiffs’ action and to continue to press forward notwithstanding this offer from defendants, after he was in possession of their motion papers, supports a sanction.
Although an evidentiary hearing sometimes is required to make a determination of whether a sanction should be imposed (Walker v Weinstock, 213 AD2d 631 [2d Dept 1995]), that requirement is not necessary here because the request for sanctions against the attorney was a separate and distinct prayer for relief on this motion. The attorney therefore has been afforded the opportunity to respond, and has not requested a hearing on the subject. Therefore, in this instance it is not necessary to hold an evidentiary hearing on the issue of whether the noted conduct was frivolous. (Matter of Gordon v Marrone, 202 AD2d 104 [2d Dept 1994].)
As to an appropriate amount, the court must consider counsel’s own statements above and beyond the initiation and continuation of this suit on behalf of his clients. First, in his opposing affirmation he discusses the February 2014 meeting of the Village Trustees at which he reports being told that more geographical data was requested and had to be submitted by the applicant, which he indicated was unnecessary given the nature of the application itself. He then added “Perhaps if Defendants withdrew their efforts, the locally elected officials will consider and approve the Sub-Division Application.” (Boyle affirmation ¶ 10.) This is some evidence that he understood, or certainly believed, that suppressing the defendants’ opposition would aid his clients’ ultimate goal. The SLAPP suit he guided as counsel, which was otherwise meritless, must be viewed in light of this pronouncement.
Further, and most compelling here, counsel wrote a full-page letter to a local newspaper, which was published January 31, 2014, specifically naming and accusing the defendants to this action of propounding an “inaccurate petition,” attributing to them “self-serving” motives and describing a denial of plaintiffs’ application as being “comparable to theft” and “outrageous.” He further stated that defendants “might be attempting to leverage their close connections to the mayor and board members to accomplish this.” Near the end of the letter, he states as follows:
“In an effort to dissuade the Towers and Griffith families from further conduct as well as to hold *673 them accountable for what they were attempting to accomplish, the Trust has brought suit in Supreme Court, Nassau County . . . Eventually it will be determined if they went too far in their zeal to prevent the subdivision.” (Dunne reply aff, exhibit I.)
This clear statement that the lawsuit was intended to silence defendants, amplified by the public nature of that statement, the public naming of the defendants, and the intemperate description of the defendants’ alleged motivations and actions, all by a member of the bar who must be charged with knowledge of the law, calls for a strong response from this court.
Accordingly, Edward J. Boyle, Esq., counsel to plaintiffs, is hereby sanctioned in the amount of $10,000 for his frivolous conduct, the maximum permitted under the Uniform Rules, which shall be payable to the Lawyers’ Fund for Client Protection, 119 Washington Avenue, Albany, New York, 12210. Notice will be given to the Fund, as required by the rule. Payment shall be made no later than April 14, 2014.
The court takes no pleasure in directing the sanction, but the proper functioning of our courts, including the regulation of an attorney’s behavior, requires that the Uniform Rule under which this direction is made be given meaning. In this case, it must lead to the foregoing result.
With regard to the costs and fees that are owed to the defendants under this decision and order, a hearing must be held to determine the expenses incurred by the defendants in the defense of this action. Those costs and fees shall include the expenses of the hearing itself.
Subject to the approval of the justice there presiding and provided a note of issue has been filed by the defendants at least 10 days prior thereto, this matter is referred to the Calendar Control Part (CCP) for a hearing on April 21, 2014, at 9:30 a.m., to make the necessary assessment.
A copy of this order shall be served on the Calendar Clerk and accompany the note of issue when filed. The failure to file a note of issue or appear as directed may be deemed an abandonment of the claims giving rise to the hearing.
The directive with respect to the hearing is subject to the right of the justice presiding in CCP to refer the matter to a justice, judicial hearing officer or a court attorney/referee as he or she deems appropriate.

. At various points in the papers the decision-making body is referred to as Trustees, the Planning Board, or Board of Directors. The court will simply refer to the Village, as the exact name of the body with the authority to make the subject determination is unclear.

. “Frivolous conduct” is defined as “completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law” or “is undertaken primarily to delay or prolong . . . litigation, or to harass or maliciously injure another” or “asserts material factual statements that are false.” (22 NYCRR 130-1.1 [c] [1], [2], [3].)