Salami v TD Bank (2024 NY Slip Op 51115(U))

[*1]

Salami v TD Bank

2024 NY Slip Op 51115(U)

Decided on August 28, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 28, 2024
Supreme Court, Kings County

Sakirat Salami, Plaintiff,

against
TD Bank, Defendant.

Index No. 482/2024

Sakirat Salami, Brooklyn, plaintiff pro se.
Duane Morris LLP, New York (Gabrielle Pelura of counsel), for defendant.

Aaron D. Maslow, J.

The following papers from the Kings County Clerk's Office were used on this motion:[FN1]

Summons with Notice, Index No. 413/2023 (filed 06/07/2023)
Order Granting Poor Person Status, Index No. 413/2023 (filed and granted 08/02/2023)
Affidavit of Service, Index No. 413/2023 (filed 08/03/2023)
Order, Index No. 413/2023 (dated 11/30/2023)
Notice of Appeal/Informational Statement, Index No. 413/2023 (filed 12/12/2023)
Order, Index No. 413/2023 (dated 03/29/2024)
Order, Index No. 413/2023 (dated 06/07/2024)
Summons with Notice, Index No. 482/2024 (filed 06/10/2024)
Request for Judicial Intervention, Index No. 482/2024 (filed 06/11/2024)
Notice of Motion, Index No. 482/2024 (filed 06/11/2024)
Affidavit of Plaintiff, Index No. 482/2024 (dated 06/10/2024)
Part 130 Certification, Index No. 482/2024 (undated)
Affidavit of Service, Index No. 482/2024 (dated 6/10/2024)
Upon the foregoing papers, and having heard oral argument and due deliberation having been had [FN2]
, the within motion is determined as follows:
Plaintiff Sakirat Salami ("Plaintiff"), a pro se litigant, commenced this breach of contract action against Defendant "TD Bank"[FN3]
("Defendant") on June 10, 2024 through the filing of a summons with notice. The notice alleged: "I want $2,423,010,00." During oral argument, Plaintiff clarified that her claim was for $2,423,010,000, i.e., over two billion dollars (the last zero having been left out by Plaintiff in the notice). A summons with notice is one of the three methods for commencing an action in New York State, the other two being a summons and a complaint, and a summons with a combined motion for summary judgment, a method of commencement used most often when money is claimed to be owed to a plaintiff (see CPLR 304, 3213).
A motion is a request for relief that is incidental to a lawsuit. Pending before this Court is Plaintiff's motion. Plaintiff's notice of motion stated, "I want back [$]2,423,010,000." In support of the motion is the affidavit of Plaintiff in which she alleged, "I want back my [$]2,423,010,000," and "The money I am asking for was taken/stolen from me."
According to CPLR Section 2214 (a), "A notice of motion shall specify the time and place of the hearing on the motion, the supporting papers upon which the motion is based, the relief demanded and the grounds therefor." Omitting a specific statute or rule relied on in the notice of motion will not per se lead to denial, as the grounds may be contained within the papers submitted in support (see Rosenheck v Schachter, 194 AD3d 1144 [3d Dept 2021]; Blauman-Spindler v Blauman, [*2]68 AD3d 1105 [2d Dept 2009]). However, "the fact that [the movant] did not provide any grounds for her request, either in the notice of motion or the supporting affirmation, was fatal (see CPLR 2214 [a]; Matter of LiMandri, 171 AD2d 747, 747 [1991]; Abizadeh v Abizadeh, 159 AD3d 856, 857 [2018])" (Yakobowicz v Yakobowicz, 217 AD3d 733 [2d Dept 2023]).
In Abizadeh (159 AD3d at 857), it was held:
The plaintiff's notice of cross motion failed to sufficiently specify the relief sought, against whom it was sought, and the grounds therefor (see CPLR 2214 [a]). Although the plaintiff's supporting papers supplied the missing information, a court is not required to comb through a litigant's papers to find information that is required to be set forth in the notice of motion (see 18th Ann Rep of Jud Conf on CPLR at 137, reprinted in 1980 McKinney's Session Laws of NY at 1925, 1932; see generally Fried v Jacob Holding, Inc., 110 AD3d 56, 61-62 [2013])
Although Plaintiff wrote in her affidavit, "I want back my [$]2,423,010,000," and "The money I am asking for was taken/stolen from me," she did not set forth the grounds upon which she claimed she was entitled to this relief. As such, Plaintiff's motion papers fail to state in the most elementary form the basis for this claim to such a huge sum from Defendant. At oral argument, Plaintiff misunderstood what is required on a motion. She assumed that there would be some sort of instant hearing or a trial on her claim against Defendant. Such assumption is incorrect. Motion papers must set forth in writing, and perhaps with legally admissible documentary evidence, the grounds for the relief which is sought.
Plaintiff commenced a previous action one year ago against TD Bank under a different Kings County Supreme Court index number, 413/2023, seeking $1,422,010,000 on a breach of contract claim. In an order dated November 30, 2023, this Court stated the following:
The motion by Plaintiff seeking "Everything was sought" is DENIED, and this action is DISMISSED. This Court finds that the summons with notice was not properly served. Plaintiff stated that no service took place at 957 Marcy Avenue, as the affidavit of service of initiating papers states. The Court finds that the motion papers were not properly served. Although the unsworn affidavit of service states the address of service as 957 Marcy Avenue, Plaintiff stated that such address was not where papers were served. Moreover, she claims to have served, but a party may not serve her own papers. Further, the notice of motion fails to comply with CPLR 2214 in that the relief demanded and the grounds therefor are not adequately stated. There are no details as to the underlying claim or an explanation of what is sought in the motion. While Plaintiff claims that TD Bank owes her more than a billion dollars, there is no elaboration in the papers.
On March 29, 2024, a separate order was issued by this Court:
The motion by Plaintiff seeking unspecified relief is DENIED. This motion was not supported by an affidavit and there was no notice of motion. As the notices of appeal are not meant to be heard here, Denied. To the extent this is a motion to reargue (which is not so stated), it is DENIED.
On June 7, 2024, a third order was issued by this Court:
Plaintiff's motion, not provided to the court, is DENIED. This action was dismissed on 11/30/2023. Plaintiff filed a notice of appeal. No further papers in this action are to be filed in Supreme Court, Kings County, without prior approval of the Court. Neither the County Clerk, the Motion Support Office, nor Part 72 shall calendar any motion in this action unless this Court executes an order placing said motion on the calendar.
Discussing a pro se litigant's repetitive filing of motions, another court wrote:
A party "may prosecute or defend a civil action in person" subject to certain exceptions such as infancy and incompetency. (CPLR 321[a]; Muka v. New York State Bar Assn., 120 Misc [*3]2d 897, 903 [1983]; see CPLR 1201.) A pro se litigant, however, acquires no greater right than any other litigant. (Roundtree v. Singh, 143 AD2d 995, 996 [1988]; see CPLR 105[c].) As has often been stated, a litigant who represents himself does so at his own peril. (Banushi v. Lambrakos, 305 AD2d 524, 524 [2003]; Davis v. Mutual of Omaha Ins. Co., 167 AD2d 714, 716 [1990].) Moreover, "the fact that one appears pro se is not a license to abuse the process of the court ..." (Kane v. City of New York, 468 F Supp 586, 592 [SDNY 1979], affd 614 F.2d 1288 [2d Cir1979].)
Public policy generally mandates free and open access to the courts. (Board of Educ. Of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Assn., 38 NY2d 397, 404 [1975].) Such right, however, is not unlimited and may be curtailed in appropriate instances. A judge "has both the duty and the power to protect the courts, citizens and opposing parties from the deleterious impact of repetitive, unfounded pro se litigation." (Muka v. New York State Bar Assn., 120 Misc 2d at 903 [quoting People v. Dunlap, 623 P.2d 408, 410 [Colo 1981].) . . .
Courts in this state have barred or restricted pro se litigants from further litigation where that party has engaged in continuous and vexatious litigation motivated by ill will, spite, and intended to harass or annoy or embarrass another. (see Scholar v. Timinsky, 87 AD3d 577 [2011][affirming order enjoining pro se litigant from bringing further motions in the action without permission of the court]; Vogelgesang v. Vogelgesang, 71 AD3d 1132, 1134 [2010][affirming order enjoining pro se litigant from filing further actions or motions without prior written approval]; Matter of Robert v. O'Meara, 28 AD3d 567, 568 [2006][affirming order enjoining petitioner from commencing further actions or proceedings under Freedom of Information Law]; Duffy v. Holt—Harris, 260 AD2d 595 [1999][affirming order enjoining pro se litigant from making further motions without prior approval]; Jackson v. Deer Park Ventures, 9 Misc 3d 1123(A)[2005][enjoining pro se litigant from bringing any future actions in the New York State Unified Court System against the defendant without the prior approval of Administrative Judge]; Matter of Winters v. Gould, 143 Misc 2d 44 [1989][enjoining pro se litigant from commencing any further actions or making any further motions unless represented by an attorney and without prior approval of the Administrative Judge]; see also Matter of Rappaport, 109 Misc 2d 640 [1981] [revoking litigant's right to appear pro se due to disruptive courtroom behavior] ). In the above cases, the courts found that the litigant was abusing the judicial process. Courts in other states have taken similar approaches to dealing with one who abuses the judicial process. (see Zorn v. Smith, 189 Vt 219, 19 A3d 112 [2011]; Eismann v. Miller, 101 Idaho 692, 619 P.2d 1145 [1980]; Pfeifer v. Christian Science Bd. of Directors, 62 Ill App 3d 918, 379 N.E.2d 653 [1978].)
The record herein as well as the history recited above reveals that this is the fourth application by the defendant before this court to vacate the default judgment. Each application has been denied with an adequate explanation. The Appellate Division has also denied defendant's appeal. While this court is aware that restricting the "free access" to the courts is harsh, it is a remedy that is necessary in this case in view of the defendant's repeated filings of the same application and numerous attempts to re-litigate the same issue. Although defendant may have labeled his applications in different ways, they all sought relief from the default judgment. It is the opinion of this court that the defendant will continue to make these applications seeking similar relief unless some action is taken to enjoin him.
(Jordan v Yardeny, 35 Misc 3d 1214[A]. 2012 NY Slip Op 50701[U] [Sup Ct, Queens County 2021].)
"[A] litigious plaintiff pressing a frivolous claim can be extremely costly to the defendant and [*4]can waste an inordinate amount of court time, time that this court and the trial courts can ill afford to lose. Thus, when, as here, a litigant is abusing the judicial process by hagriding individuals solely out of ill will or spite, equity may enjoin such vexatious litigation" (Sassower v Signorelli, 99 AD2d 358, 359 [2d Dept 1984]).
"Litigants who use our court system for improper purposes, such as for retribution and harassment, may be sanctioned under the rules designed to deter frivolous conduct" (Matter of Gordon v Marrone, 202 AD2d 104 [2d Dept 1994]). In Gordon, "The Supreme Court dismissed the proceeding here, on the merits, although it determined that the petitioner had raised a 'colorable' claim. The court imposed a sanction against the petitioner, finding that the litigation had been brought primarily for improper purposes" (id. at 106).
"[T]he courts have inherent power to impose sanctions as a means of curbing abusive and frivolous litigation. Frivolous claims and abusive litigation practices were causing unjustifiable burdens on an already overcrowded court system. Inordinate delays in the resolution of genuine disputes and increases in the expense of lawsuits for both litigants and the courts were the result. The need for sanction power had become obvious" (Gordon, 202 AD2d at 104).
"Conduct is frivolous and can be sanctioned under the court rule if 'it is completely without merit . . . and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; or . . . it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another' " (id.).
In Breytman v Schechter (101 AD3d 783 [2d Dept 2012]), "The Supreme Court properly imposed a sanction upon the plaintiff for his frivolous conduct in connection with his motion, inter alia, for leave to reargue his opposition to the Schechter defendants' motion, among other things, for summary judgment dismissing the complaint insofar as asserted against them, as the plaintiff's motion was completely without merit in law and was undertaken primarily to harass Roberta S. Schechter" (id. at 785). Moreover, "while public policy mandates free access to the courts, "when a litigant is abusing the judicial process by hagriding individuals solely out of ill will or spite, equity may enjoin such vexatious litigation" (id. [internal quotation marks omitted]).[FN4]

"Judges know that pro se plaintiffs file frivolous cases. But they know that pro se plaintiffs file meritorious ones as well, so they try to strike a balance. They want to protect the judicial system and the defendant from the unnecessary burdens and expenses of baseless litigation, but they also want to ensure that plaintiffs with a legitimate issue have a fair chance at getting their day in court." (Len Niehoff, Here Comes the Pro Se Plaintiff, 32 No. 4 Litigation 12 at 14 [Summer 2006].)
Here, there is no merit to Plaintiff's claim that TD Bank owes her $2,423,010,000 — which she previously claimed was $1,422,010,000 — based on papers she has submitted in both actions. In fact, it appears that in the current action, Plaintiff simply added one billion dollars to the previous case's amount in the billions column and increased the 2 in the millions column to 3. This evidences that there is no rhyme or reason to the amount claimed herein.
Plaintiff's claim that TD Bank stole nearly two and a half billion dollars from her would strike anyone with a modicum of common sense as the imaginations of a fabulist. Indeed, if true, it would have placed her in list of the world's 1400 wealthiest people (see Forbes, World's Billionaires List; The Richest in 2024, available at https://www.forbes.com/billionaires/ [last accessed Aug. 28, 2024]). This Court surmises that had Plaintiff's allegations contained a shred of truth, she would have retained an attorney.
Plaintiff may have a more mundane dispute with TD Bank over some transaction or another interaction, but she has failed to properly present it to the court. Her constant, repetitious filings have necessitated this Court and its staff, including the law clerks and Part Clerk, having to expend time to review and process them. This is unfair to other litigants, including other pro se plaintiffs, who do have serious claims which merit our attention.
With respect to the federal courts, one commentator observed:
Judicial attention is a scarce resource, made ever scarcer by the intense pressure of large and rising caseloads in the federal courts.[ ] This increase in caseload does more than increase judges' workplace stress  it has adverse effects on the quality of their work product, as reported by the judges themselves.[ ] Scholars have noted that removing frivolous cases from the federal docket is the archetypical "low-hanging fruit" option for dealing with this case pressure  it would leave more time to deal with meritorious actions without depriving any good-faith litigants of their day in court.[ ]
. . .
Judicial solutions include pre-filing injunctions, which prevent pseudolitigants from filing new lawsuits or motions without the court's leave.[ ] These injunctions  also known as gatekeeper orders  are effective at preventing pseudolegal filings from amassing, but they raise due process concerns and are consequently discouraged in most cases.[ ]
(Samuel Barrows, Sovereigns, Freemen, and Desperate Souls: Towards a Rigorous Understanding of Pseudolitigation Tactics in United States Courts, 
62 B C L Rev 905 at 922-930 [March 2021].)[FN5]
This matter was previously determined when the action bearing Index No. 413/2023 was dismissed. Plaintiff's recourse was to perfect the appeal she filed by filing the requisite appellate papers with the Appellate Division — not to continue with more motions or to commence another action. Continuously filing motions and commencing another action constitutes vexatious conduct. This is an abuse of the New York State court system since this is a frivolous claim that was found to lack merit. Defendant TD Bank has had to respond repeatedly to Plaintiff's litigious actions. No doubt, it expended thousands of dollars to its attorneys just for court appearances. Like the plaintiff in Breytman, whose motion was completely without merit in law and was pursued primarily to harass the defendant, Plaintiff's claim here is lacking in merit. In Breytman, the Appellate Division sustained the actions of the Supreme Court: "Here, the Supreme Court properly directed the plaintiff to seek leave of the 'appropriate Administrative Justice or Judge' before filing any additional actions against the Schechter defendants" (101 AD3d at 785). This Court shall likewise impose a similar restraint on Plaintiff.[FN6]

Accordingly, IT IS HEREBY ORDERED as follows:
(1) Plaintiff Sakirat Salami's motion seeking $2,423,010,000 from Defendant TD Bank is DENIED.
(2) This action is dismissed with prejudice and the Kings County Clerk shall enter a judgment to that effect upon Defendant's submission of one in proper form.
(3) The Kings County Clerk, as well as the Motion Support Office and the Part 72 Ex Parte Office of Supreme Court, Civil Term, Kings County, shall not accept for official filing any legal papers from Plaintiff Sakirat Salami in any action against TD Bank, N.A. a/k/a TD Bank without prior written order from a Justice of the Supreme Court approving the filing. Any papers received from Plaintiff Sakirat Salami in any actions against TD Bank, N.A. a/k/a TD Bank shall first be forwarded, along with a copy of this order, to a Supreme Court Justice of the Court, who will then conduct an in camera review and determine whether or not the papers shall be accepted for filing.
(4) In the event this order is violated by Plaintiff Sakirat Salami, or in the event said Plaintiff submits further papers for the aforesaid in camera review which bear no legal merit, this Court will consider costs, sanctions, and contempt proceedings.
This constitutes the decision and order of the Court.
E N T E R
AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:While Plaintiff submitted only certain papers in support of her motion, the Court took judicial notice of other documents, including those in the Kings County Clerk's file for Plaintiff's previous action, filed under Index No. 413/2023 (see Matter of Department of Social Servs. v Cronin, 37 AD3d 463 [2d Dept 2007]; Khatibi v Weill, 8 AD3d 485 [2d Dept 2004]; Allen v Strough, 301 AD2d 11 [2d Dept 2002]).

Footnote 2:The parties are reminded of the provisions requiring that an opinion or decision be included in the record on appeal should one be taken (see CPLR 5526; 22 NYCRR 120.57 [b] [4], [d] [1] [iii]). Transcripts may be procured from the court reporter (see Matter of Lewandowski v Office of Ct. Admin., 173 Misc 2d 335 [Sup Ct, Albany County 1997]).

Footnote 3:In various other actions, this entity has appeared as "TD Bank, N.A." (e.g. TD Bank, N.A. v Mandia, 133 AD3d 590 [2d Dept 2015]; TD Bank, N.A. v 126 Spruce St., LLC, 117 AD3d 716 [2d Dept 2014]).

Footnote 4:Further details about the plaintiff's conduct in Breytman are set forth in the Supreme Court's decision at 30 Misc 3d 1219[A], 2011 NY Slip Op 50125[U].

Footnote 5:For a discussion of another state's attempt to bring relief to courts compelled to deal with vexatious pro se litigation, see Deborah L. Neveils, Florida's Vexatious Litigant Law: An End to the Pro Se Litigant's Courtroom Capers?, 25 Nova L Rev 343 [Fall 2000]).

Footnote 6:Although on June 7, 2024, this Court ordered, "No further papers in this action are to be filed in Supreme Court, Kings County, without prior approval of the Court," the Court did not include a provision circumscribing Plaintiff from commencing another action under a different index number as this was not anticipated.